UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

JOHN R. GREEN, III,                                                    :

                Plaintiff,                   :

   -  against -                                            :

HON. MARK ESPER, Secretary of the U.S. Department     :
of The Army,

                             :

                Defendant.
-----------------------------------------------------------------------X

**COMPLAINT & JURY DEMAND**

Civil Action No.

_____

By and through Plaintiff Mr. John R. Green, III's attorney, Jimmy M. Santos, Esq.,

Plaintiff hereby avers in this complaint and jury demand against defendant as follows:

## I.     THE PARTIES, JURISDICTION & VENUE

1.     Plaintiff Mr. John R. Green, III ("Plaintiff" or "Mr. Green") is a black African-American male who resides at 134 Mearns Avenue, Highland Falls, Orange County NY 10928.

2.     Defendant Mark Esper, in his capacity as Secretary of U.S. Department of The Army (the "Army" or "defendant") is the proper party to be sued in this action although the real party-in-interest is the Army.

3.     At all relevant times, the Army employed and continues to employ Mr. Green at the Army's at the Department of the Army Medical Command (MEDCOM), Keller Army Community Hospital (or "Keller Hospital") located in West Point, New York.

4.     At all relevant times, the Army was and continues to be Plaintiff's employer as that term is found and defined under Title VII of the Civil Rights Act of 1964, *as amended*, 42 USC secs 2000e, *et seq.* (or, "Title VII").

5.     At all relevant times, the Army had and continues to have twenty (20) or more employees.

6.     At all relevant times, Mr. Green held and continues to hold the title of Supervisor Health Technician (Refractory Surgery), GS-0640-08 at Keller Hospital.

7.     At all relevant times, members of the Army's management ("Army Management") had the authority and power to negatively affect the terms and conditions of Plaintiff's employment with defendant.

8.     At all relevant times, Col. Ava Huchun ("Col. Huchun"), a female of Asian race, ancestry and/or descent, in her capacity as Ophthalmology Chief, had and continues to have authority and power to negatively affect the terms and conditions of Plaintiff's employment with defendant.

9.     At all relevant times, Lt. Col. Laura K. Dawson ("LTC Dawson"), a Caucasian female, in her capacity as Deputy Commander, Clinical Services, had the authority and power to negatively affect the terms and conditions of Plaintiff's employment with defendant.

10.     At all relevant times, Col. Chad Haley ("Col. Haley"), a Caucasian male, in his capacity as Chief of Surgical Services, had and continues to have the authority and power to negatively affect the terms and conditions of Plaintiff's employment with defendant.

11.     At all relevant times, Ms. Cecilia A. Kampsula ("Ms. Kampsula"), a Caucasian female, in her capacity Lead LMER Specialist CPAC at West Point, had and continues to have

the authority and power to negatively affect the terms and conditions of Plaintiff's employment with defendant.

12.     More than One Hundred Eighty (180) days have lapsed since Mr. Green filed his formal EEO complaint with the EEO Office. To date, the Army has not rendered any final agency decision with respect to Plaintiff's claims of hostile work environment, harassment and disparate treatment based on race (African-American) and color (dark-skinned) and retaliation for opposing such unlawful discrimination and by engaging in prior EEO activity, and thus, Plaintiff has exhausted his administrative remedies under Title VII.

13.     This Court has subject matter jurisdiction over Mr. Green's claims under Title VII pursuant to 42 USC secs. 1331 and 1343.

14.     Venue is proper in this judicial district (the "SDNY") since all of defendant's unlawful employment practices and decisions alleged herein, and/or the adverse effects from these practices and decisions regarding the terms and conditions of Plaintiff's employment with the Army took place, were committed and/or occurred in this judicial district pursuant to 28 USC sec. 1391.


## II.     FACTUAL ALLEGATIONS AS TO PLAINTIFF'S CLAIMS


15.     Mr. Green is a veteran of the United States Army and was honorably discharged in or about 1988.

16.     In August 2011, the Army hired Mr. Green as a Health Technician (Refractive Surgery) (or "Health Technician") and as a civilian employee.

17.     As a Health Technician, some of Mr. Green's job duties included but were not limited to: being responsible for carrying out a variety of specialized procedures such as examinations, diagnostic procedures, cataract surgeries in the main OR and treating refractive errors on eye patients; providing technical information to physicians to help provide a basis for subsequent surgery or other diagnostic treatment procedures; independently performing direct patient care by compiling information concerning patients' eyes; and measuring near and distance vision using appropriate and system and equipment, among other job functions.

18.     In or about December 2011, apart from his regular duties as Health Technician, although he had not yet been promoted to a Supervisor Health Technician, Mr. Green began to perform supervisory duties including but not limited to: performing cataract surgeries in the main OR; being responsible to issue timely performance evaluations of three (3) civilian eye technicians and one (1) civilian medical support assistant; instructing employees in specific tasks and job techniques; and being responsible for managing leave and absence approval of supervised clinic personnel, among other tasks.

19.     In July 2014, the Army officially promoted Plaintiff to Supervisor Health Technician (Refractory Surgery), GS-0640-08 (the "Supervisory Position") at Keller Hospital.

20.     Throughout the entire duration of Mr. Green's employment with the Army at West Point, Mr. Green's work performance was exemplary and he well performed all his job functions and with the utmost professionalism.

21.     Before Col. Huchun became Mr. Green's immediate supervisor in August 2016, all of Mr. Green's performance evaluations evidenced his exemplary work performance.

22.     In or about 2015, Mr. Green also received the Hospital Commanders Award and the NARMC Commanders/ Sergeant Major coin for his work at West Point.

4

23.     However, soon after Col. Huchun became Plaintiff's immediate supervisor, and beginning in or about November 2016, Col. Huchun subjected Plaintiff to a continuous and ongoing hostile work environment and harassment on the basis of his race and color.

24.     On an almost daily or daily basis, unlike her better treatment of the other health technicians and administrative employee in Mr. Green's department (none of whom are African-American males) (collectively, the "Other Staff"), without any basis in fact or legitimate justification, Col. Huchin would loudly criticize Mr. Green's job performance and berate him in front of the other staff who were subordinates to Mr. Green.

25.     On several occasions, Col. Huchun would also ask Mr. Green and his colleagues where he went to school although he told her where repeatedly as if she didn't believe him. Other Army employees told Mr. Green that Col. Huchun did not like to work with people of color.

26.     On an almost daily or daily basis, unlike her better treatment of the Other Staff, Col. Huchun would, without any basis in fact or legitimate justification, Col. Huchun told Plaintiff's subordinates that his job performance was poor, which is false, and that Mr. Green was a "dumb jock".

27.     Col. Huchun also subjected Mr. Green to additional ridicule and embarrassment by removing assigned duties from Plaintiff including but not limited to: being Operating Room Surgical Technician and as Time Keeper. Instead, on several occasions, Col. Huchun humiliated Mr. Green in front of his staff by being told to sit at the front desk as a receptionist to answer phones when the receptionist was absent. Col. Huchun would also ask another African-American employee, Ms. Enone Hughes ("Ms. Hughes"), to sit at the front desk as a receptionist although

she never would ask Christopher Richey ("Mr. Richey"), a lesser qualified and lesser ranked Caucasian male, to sit and serve as the receptionist when the usual receptionist was absent.

28.     In mid-February 2017, when Mr. Green's son was diagnosed with a serious but treatable condition, unlike her not requiring medical documentation from the Other Staff ,for times they needed to take off for medical reasons or illness, Col. Huchun demanded that he submit a physician's note after every appointment Mr. Green had to attend for his son's condition.

29.     After enduring the ongoing and continuous daily humiliation and ridicule from Col. Huchin for close to three (3) months, on February 23, 2017, and during an episode in which Col. Huchun was loudly berating Mr. Green in front of his colleagues, Mr. Green told Col. Huchun that "this has to stop".

30.     Immediately thereafter, after Mr. Green went to his office and Col. Huchun had come into his office, Plaintiff told Col. Huchun that he couldn't take her constant criticism anymore.

31.     On February 24th, Col. Haley from the Department of Surgical Services told Plaintiff that Col. Huchun told him and/or other superiors of Col. Huchun that Mr. Green had yelled at her the day before, which is false.

32.     Upon information and belief, sometime from February 23rd to March 20th, as part of her continued harassment of Plaintiff due to his race and color, Col. Huchun falsely stated to LTC Dawson, Ms. Kampsula and/or other yet to be identified members of Army Management at West Point that Mr. Green was a "physical threat" to the employees and/or patients at the clinic, which is absolutely false.

33.     On March 20th, Col. Haley advised Mr. Green that there would be an official fact-finding investigation with respect to the February 23, 2017 "incident".

34.     Defendant subjected Plaintiff to even further embarrassment and ridicule when, on March 22, 2017, LTC Dawson issued a memorandum to Mr. Green in which he was advised that he was being temporarily re-assigned [effective March 22, 2017] to the Keller Optometry Clinic while the investigation of "allegations of misconduct" was on-going and that was not to enter the Ophthalmology Clinic or contact any of its employees while the investigation was assigned. Attached hereto as exhibit "A" is a copy of the 3/21/17 memorandum.

35.     As evidence of Col. Huchun's discrimination against African-Americans, after the Army re-assigned Mr. Green to the Optometry Clinic, instead of assigning Ms. Hughes, the higher grade level experienced technician who is an African-American female, to take over Mr. Green's supervisory position, Col. Huchun assigned Mr. Richey, a lesser qualified and uncredentialled Caucasian technician to assume Plaintiff's tasks.

36.     Since March 21, 2017 to the present, defendant has engaged in a *de facto* demotion of Mr. Green by stripping away all of his supervisory duties and keeping him on a "temporary change of duty" assignment on the basis of his race and color, and as retaliation for his bringing an EEO complaint, a complaint to the Inspector General and opposing unlawful discrimination despite the fact that the "fact-finding" investigator found that Mr. Green was not guilty of any misconduct or creation of a hostile work environment. However, defendant continued to have Plaintiff on "temporary change of duty assignment (up to and including to this day) even though the investigation found in the Summer of 2017 that Plaintiff *had not* engaged in any misconduct, but rather, *that Col. Huchun engaged* in a hostile work environment and misconduct.

7

37.     As further evidence of defendant's race and color discrimination, and retaliation for Plaintiff's bringing his prior EEO complaint and opposing unlawful discrimination and harassment against him, on April 16, 2019, Col. Haley "changed [Plaintiff's] duty assignment" from the Keller Community Hospital Optometry to Mologne Optometry until Memorial Day 2019 *without citing any reason or reasons* for the change. Attached hereto as exhibit "B" is a copy of the April 19, 2019 memo.

38.     In effect, defendant's discriminatory, harassing and retaliatory actions against Mr. Green by stripping away all his supervisory duties and keeping him in "temporary duty" status constitute a *de facto* demotion of Plaintiff and were/ are designed to try to force Mr. Green to resign from his position even though he has no intention of doing so. It is now over two (2) years that Plaintiff has endured the humiliating effects of the *de facto* demotion.

39.     As a result of the Army Management's egregious race and color discrimination and harassment and retaliatory acts against Plaintiff, Mr. Green has suffered from significant emotional and physical distress to the point he has had to seek treatment from his physician and a mental health professional.

40.     Defendant's acts against Mr. Green have been so egregious and have rendered Plaintiff's work conditions so intolerable.

41.     As a result of defendant's discrimination, hostile work environment, and retaliation against Mr. Green for his prior EEO activity and opposition to unlawful discrimination, Plaintiff has suffered, and will likely continue to suffer severe embarrassment, ridicule and loss of self-esteem.

**AS AND FOR PLAINTIFF'S 1ˢᵗ CAUSE OF ACTION AGAINST DEFENDANT FOR DISPARATE TREATMENT BASED ON HIS RACE UNDER TITLE VII**

42.     Plaintiff hereby repeats and re-alleges each and every allegation set forth in paragraphs 1 through 41 above.

43.      As set forth in more detail above, defendant, through its employees' intentional acts, has subjected Plaintiff to inferior terms and conditions of his employment on the basis of his race (African-American) in comparison to his Caucasian counterparts, including but not limited to subjecting Mr. Green to a *de facto* demotion as detailed above, in violation of 42 USC secs 2000e, *et seq.* (or, "Title VII").

**AS AND FOR PLAINTIFF'S 2ⁿᵈ CAUSE OF ACTION AGAINST DEFENDANT FOR DISPARATE TREATMENT BASED ON SKIN COLOR UNDER TITLE VII**

44.     Plaintiff hereby repeats and re-alleges each and every allegation set forth in paragraphs 1 through 43 above.

45.      As set forth in more detail above, defendant, through its employees' intentional acts, has subjected Plaintiff to inferior terms and conditions of his employment on the basis of his color (black) in comparison to his light-skinned counterparts, including but not limited to subjecting Mr. Green to a *de facto* demotion as detailed above, in violation of Title VII.

**AS AND FOR PLAINTIFF'S 3rd CAUSE OF ACTION AGAINST DEFENDANT FOR RETALIATION AGAINST PLAINTIFF BASED ON HIS PRIOR eeo ACTIVITY AND OPPOSITION TO UNLAWFUL DISCRIMINATION COLOR UNDER TITLE VII**

46.     Plaintiff hereby repeats and re-alleges each and every allegation set forth in paragraphs 1 through 45 above.

47.      As set forth in more detail above, defendant, through its employees' intentional acts, has subjected Plaintiff to inferior terms and conditions of his employment on the basis of his prior EEO activity and opposition to unlawful discrimination, including but not limited to subjecting Mr. Green to a *de facto* demotion as detailed above, in violation of Title VII.

**AS AND FOR PLAINTIFF'S 4th CAUSE OF ACTION AGAINST DEFENDANT FOR SUBJECTING HIM TO A HOSTILE WORK ENVIRONMENT BASED ON HIS RACE UNDER TITLE VII**

48.     Plaintiff hereby repeats and re-alleges each and every allegation set forth in paragraphs 1 through 47 above.

49.      As set forth in more detail above, defendant, through its employees' intentional acts, has subjected Plaintiff to a hostile work environment on the basis of his race (African-American) in comparison to his Caucasian counterparts in violation of Title VII.

**AS AND FOR PLAINTIFF'S 5th CAUSE OF ACTION AGAINST DEFENDANT FOR SUBJECTING HIM TO A HOSTILE WORK ENVIRONMENT BASED ON SKIN COLOR UNDER TITLE VII**

50.     Plaintiff hereby repeats and re-alleges each and every allegation set forth in paragraphs 1 through 49 above.

51.     As set forth in more detail above, defendant, through its employees' intentional acts, has subjected Plaintiff to a hostile work environment on the basis of his color (black) in comparison to his light-skinned counterparts in violation of Title VII.

**AS AND FOR PLAINTIFF'S 6th CAUSE OF ACTION AGAINST DEFENDANT FOR SUBJECTING HIM TO A HOSTILE WORK ENVIROENMENT AGAINST PLAINTIFF BASED ON HIS PRIOR EEO ACTIVITY AND OPPOSITION TO UNLAWFUL DISCRIMINATION UNDER TITLE VII**

52.     Plaintiff hereby repeats and re-alleges each and every allegation set forth in paragraphs 1 through 51 above.

53.     As set forth in more detail above, defendant, through its employees' intentional acts, has subjected Plaintiff to a hostile work environment on the basis of his prior EEO activity and opposition to unlawful discrimination in violation of Title VII.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court empanel a jury of his peers, and enter judgment against defendant Army as follows, and in an amount to be determined at trial, inclusive but not limited to:

(a)     an award of damages for all back and front wages to the extent he incurs any loss of pay, and in an amount to be determined at trial, for defendant's discriminatory and retaliatory acts under Title VII;

(b)     an award of full compensatory damages as against defendant Army for its employees' unlawful discriminatory and retaliatory acts against Plaintiff in an amount to be

determined at trial, including payment to Plaintiff for his suffering significant/ severe physical and mental distress and injury, mental anguish, humiliation, and embarrassment from defendants' unlawful discriminatory and retaliatory acts under Title VII;

(c)  an award of liquidated and/or punitive damages in an amount to be determined at trial as against defendant for its' employees' intentional unlawful discriminatory and retaliatory acts against Plaintiff under Title VII to the extent the same are available;

(d)  an award of Plaintiff's reasonable attorney's fees and the costs of prosecuting this action under 42 USC sec. 1988, 42 USC sec. 1981(a) and Title VII; *and*

(e)  any such other and further relief that this Court may deem just and proper.

Dated: May 6, 2019
      Cornwall, New York

                           Respectfully Submitted,

                           *Jimmy M. Santos*
                         _____
                         Jimmy M. Santos, Esq. (JS-0947)
                         LAW OFFICES OF JIMMY M. SANTOS, PLLC
                         28 Wilson Place
                         Cornwall, New York 12518
                         Telephone: (845) 537-7820
                         Fax:    (845) 595-2266
                         Email: jmssesq@gmail.com
                         *Attorney for Plaintiff John R. Green, III*